UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CASSANDRA DENISE BLANCHARD**                         **PLAINTIFF**

**V.**                  **NO. 4:19CV00068 LPR-JTR**

**ANDREW SAUL,**
**Commissioner of Social Security Administration**[1]          **DEFENDANT**

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, you must specifically explain the factual and/or legal basis for each of your objections, and your objections must be received by the Clerk of this Court within fourteen (14) days of the date this Recommendation was filed. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction:

Plaintiff, Cassandra Denise Blanchard ("Blanchard"), applied for disability benefits on February 9, 2016, alleging disability beginning on October 18, 2015.[2]

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] At the administrative hearing on November 21, 2017, the ALJ granted Blanchard's motion to amend her onset date to March 30, 2016. (Tr. at 35). However, in the ALJ's decision, she failed to use the new onset

(Tr. at 11). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application for benefits. (Tr. at 24). Because the Appeals Council later denied her request for review (Tr. at 1), the ALJ's opinion now stands as the final decision of the Commissioner.

For the reasons stated below, this Court should reverse the Commissioner's decision and remand the case for further proceedings.

## II. The Commissioner's Decision:

The ALJ found that Blanchard had not engaged in substantial gainful activity since the *original* onset date of October 18, 2015. (Tr. at 14). At Step Two, the ALJ found that Blanchard had the following severe impairments: postural orthostatic tachycardia syndromes ("POTS"), pseudo seizures, neurologic cardiac syncope, depression, and anxiety. *Id*.

After finding that Blanchard's impairments did not meet or equal a listed impairment (Tr. at 14-17), the ALJ determined that she had the residual functional capacity ("RFC") to perform *less than sedentary work*, with additional limitations,[3]

---

date. (Tr. at 24).

[3] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567.

which included only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; she could not climb ladders, work around hazards (unprotected heights and moving mechanical parts), or work in extreme heat; she could perform simple, routine, and repetitive tasks; she could make simple work related decisions; she could concentrate, persist, and maintain pace with normal breaks; and she must have only incidental interpersonal contact with supervision which is simple, direct, and concrete. (Tr. at 17).

Based on this RFC, the ALJ concluded that Blanchard was unable to perform any of her past relevant work. (Tr. at 23). At Step Five, the ALJ relied upon the testimony of a Vocational Expert ("VE") to find that, based on Blanchard's age, education, work experience and RFC, she could perform other jobs, such as food & beverage clerk and stuffer (one who fills pillows and toys). (Tr. at 24, 58). Accordingly, the ALJ held that Blanchard was not disabled. *Id*.

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable

3

mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Blanchard's Arguments on Appeal

Blanchard contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ erred because: (1) her hypothetical question to the VE described the hypothetical claimant as being able to perform "no more than sedentary work" – *not* the "less than sedentary work," the ALJ *explicitly found* was the most work Blanchard was capable of performing;[4] (2) the VE's

---

[4] In the fifth finding of the ALJ's decision, she explicitly found that Blanchard's RFC only allowed her to perform work at the "*less than sedentary*" level. (Tr. at 17). In the ALJ's erroneous hypothetical to the

4

testimony, which the ALJ relied on to find that Blanchard could perform work as a beverage clerk and stuffer, *conflicts with* the Dictionary of Occupational Titles ("DOT"), which provides that there are no jobs available in the national economy for someone like Blanchard, who can only perform work at the level of "*less than sedentary*"; and (3) she did not give the proper weight to the medical opinions of Blanchard's treating physicians. For the reasons explained below, the Court concludes that the ALJ committed reversible error which requires the case to be remanded for further administrative proceedings.

Blanchard had documented episodes of syncope, associated with dizziness, nausea, trouble sleeping, confusion, and extreme fatigue. (Tr. at 389, 473, 315, 334, 332, 451, 356-361, 375) She occasionally blacked out and fell down at home. These medical problems were witnessed by her husband of 27 years, who lived with her. (Tr. at 53-55, 332, 375). She would lose consciousness for 3-5 minutes and be unable to move or form sentences. *Id*. She had hypotension (low blood pressure), which caused blood to run into and pool in her legs when she was sitting or standing. (Tr. at 50). Blanchard has to elevate her legs for most of the day, and she requested that she be allowed to change position during the hearing. (Tr. at 49-50).

---

VE, he describes the hypothetical claimant as being able to perform "no more than sedentary work," which led the VE to find the hypothetical claimant could perform the jobs of "beverage clerk" and "stuffer," both of which are classified as "sedentary" positions.

Blanchard regularly saw Dr. Richard Heck, M.D. (family medicine), and Dr. Stephen Greer, M.D. (cardiologist). They diagnosed Blanchard with numerous medical problems, including POTS, pseudo seizure, orthostatic hypotension, circadian sleep disturbance, syncope, and neurocardiogenic syndrome. (Tr. at 44). To treat those problems, Blanchard was prescribed and took medication, supplements, hydration therapy, and wore compression stockings. (Tr. at 329-335, 723-733). She had a positive tilt table test for neurocardiogenic etiology.[5] (Tr. at 332).

Treatment notes from the Little Rock Diagnostic Clinic, in March of 2016, showed sudden onset episodic syncope, with varied duration of symptoms, accompanied by dizziness, extreme fatigue, and marked hypotension. (Tr. at 356). Blanchard also had headaches and problems with recalling words. *Id*. Her doctor agreed to refer her to a neurocardiologist in Dallas. *Id*.

In late 2016 and early 2017, Blanchard reported to Dr. Greer that she was feeling poorly, and could not sleep or function during the day. (Tr. at 615-630, 707-711). Dr. Greer continued Blanchard on medications. *Id.*

---

[5] A tilt table test is used to evaluate the cause of unexplained fainting (syncope). A doctor might recommend a tilt table test if a patient has repeated, unexplained episodes of lightheadedness, dizziness or fainting. The test can help determine if the cause is related to heart rate or blood pressure. https://www.mayoclinic.org/tests-procedures/tilt-table-test/about

Dr. Heck noted, in May 2016, that Blanchard had a "very severe" vasovagal reaction to a blood draw.[6] (Tr. at 373-374). In October 2017, he observed that anxiety and sleep medications might be causing Blanchard's syncope to worsen (Tr. at 722-724). He said that her case was complicated, she should see a seizure specialist, and she was unemployable. (Tr. at 722-724).

On September 26, 2017, Blanchard reported to Dr. Greer that she was still having syncope, and she had an episode in his office. (Tr. at 659-671). He performed an EEG and tilt test. She had three episodes of syncope during or shortly before those tests were administered.[7] *Id*. Dr. Greer diagnosed poorly controlled insomnia and he confirmed pseudo seizures. (Tr. at 666, 689).

Dr. Greer filled out a medical source statement on December 1, 2017, based on his year-long treatment of Blanchard. (Tr. at 727-732). He said she could only sit for 4 hours total in an 8-hour workday, and she could stand for 1 hour and walk for 2 hours during the day.[8] *Id*. He based his opinions on the diagnosis of pseudo

---

[6] A vasovagal syncope trigger causes your heart rate and blood pressure to drop suddenly. That leads to reduced blood flow to your brain, causing you to briefly lose consciousness.
https://www.mayoclinic.org/diseases-conditions/vasovagal-syncope/symptoms-causes

[7] Blanchard's husband regularly attended her doctors' appointments, and he was present on this date. He testified convincingly that she had blacked out, fallen down, and was unable to move or speak. (Tr. 52-55). He said he had seen these symptoms at home regularly. *Id.*

[8] This translates to "less than sedentary work", which is the same finding the ALJ ultimately made in arriving at Blanchard's RFC. However, it was *not* the RFC the ALJ described in her hypothetical question to the VE.

7

seizures. *Id.*

Blanchard explained in her function report and during the administrative hearing that she could perform no activities of daily living, except for personal care, and that she had to recline with her feet up for most of the day. (Tr. at 232-236). Blanchard had a good work history, and she bolstered her credibility by admitting that some treatment helped her (her condition worsened, however, during the relevant time-period). (Tr. at 18-19, 37-38). Her husband's testimony also lent support to her allegations. (Tr. at 52-55).

Finally, during the administrative hearing, Blanchard submitted a letter from Dr. Greer, dated September 19, 2017, in which he said she had intermittent symptoms that were random in nature and difficult to treat. (Tr. at 30). He commented on her significant sleep problems, which contributed to her syncope and pseudo seizures. *Id.* Dr. Greer agreed with Dr. Heck's opinion that Blanchard was unable to return to employment. *Id.*

Despite the fact that Dr. Heck and Dr. Greer had both treated Blanchard for a substantial period of time, the ALJ elected to give their opinions little weight. (Tr. at 21). This left the ALJ with only the opinions of two reviewing physicians. After looking only at Blanchard's medical records, they both reached the startling conclusion that she could perform *semi-skilled work at all levels of exertion*. (Tr. at

70-71, 86-88). The ALJ did *not* say what weight, if any, she gave to the opinions of the reviewing physicians. However, by accepting Dr. Greer's opinion, that Blanchard was only capable of performing work at the "less than sedentary" level, it appears she rejected the opinions of the reviewing physicians.

Given these undisputed facts, the ALJ committed reversible error in asking and relying on the VE's answer to a hypothetical question that erroneously described the hypothetical claimant as being able to perform "no more than sedentary work," rather than "less than sedentary work." (Tr. at 57).

The DOT does not list *any jobs* that are available at the less than sedentary level. Thus, according to the DOT, Blanchard would be *unemployable*. Obviously, there is an important difference between someone who can perform "no more than sedentary work" and someone who can perform "less than sedentary work." Hypothetical questions "should set forth impairments supported by substantial evidence on the record and accepted as true and capture the concrete consequences of those impairments." *Jones v. Astrue*, 619 F.3d 963, 972 (8th Cir. 2010); *Mitchell v. Sullivan*, 925 F.2d 247, 249-50 (8th Cir. 1991)(a hypothetical to a vocational expert that does not accurately set forth the petitioner's condition cannot furnish substantial evidence of the absence of a disability). The hypothetical that the ALJ posed to the VE did *not* capture the limitations that *she herself* assigned to Blanchard

in arriving at Blanchard's RFC. For this reason, the ALJ did not meet her burden at Step Five, and committed reversible error.

Finally, where there is a conflict in the medical record, the ALJ has a duty to further develop the record. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). Both of Blanchard's treating physicians expressed the opinion that she was unable to work. (Tr. at 30, 722-733). The DDS reviewing physicians, who never examined or treated Blanchard, opined that Blanchard could perform semi-skilled work, at all *exertional levels*, despite all of her severe limitations. (Tr. at 70-71, 85-86). Given the sharp conflict between the opinions of two of her treating physicians and the opinions of the two DDS reviewing physicians, the ALJ was obligated to order a consultative examination to assist in resolving that conflict.[9]

## III. Conclusion:

The Court concludes that the ALJ's decision is not supported by substantial evidence. On remand, the parties should supplement the medical record and the ALJ should ensure that, if a consultative examination is necessary, it is performed so that the medical record is complete and fully developed.

---

[9] During the administrative hearing, Blanchard testified that she was scheduled for seizure testing by a neurologist within the next sixty days. (Tr. at 46). On remand, the results of those neurological tests will be available and should help in evaluating how Blanchard's seizures affect her ability to work.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further proceedings.

DATED this 16th day of December, 2019.

_____
UNITED STATES MAGISTRATE JUDGE